UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LEONARD M. HICKMAN,

        Plaintiff,

v.

HEIDI E. WASHINGTON et al.,

        Defendants.
_____/

Case No. 2:22-cv-232

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington and Caron. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claims against remaining Defendants Huss, Johnson, and Unknown Parties #1, 2, and 3, his claims for declaratory relief against the remaining Defendants, and his claim for injunctive relief against Defendant Huss.

Plaintiff's Eighth Amendment deliberate indifference claims for damages against Defendants Huss, Johnson, and Unknown Parties #1, 2, and 3 remain in the case.

## Discussion

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues MDOC Director Heidi E. Washington as well as the following MBP personnel: Warden Erica Huss, Grievance Coordinator Glenn Caron, Assistant Residential Unit Supervisor Unknown Johnson, Lieutenant/Shift Commander Unknown Party #1, and Sergeants/Supervisors Unknown Parties #2 and #3.

Plaintiff's complaint concerns an outbreak of COVID-19 that occurred in 2020. He alleges that on or about September 30, 2020, multiple prisoners confined in G-Unit tested positive for COVID-19. (ECF No. 1, PageID.11.) Plaintiff sent numerous kites to Defendants "to put on notice all staff that prisoner who tested positive for COVID-19 [should] be moved/quarantined and separated" from Plaintiff and other inmates who had tested negative for the virus. (*Id.*) Plaintiff contends that Defendants "refused to respond and failed to take action to prevent Plaintiff becoming or being exposed and contracting the COVID-19 virus." (*Id.*, PageID.12.) Plaintiff ultimately tested positive for COVID-19 on October 10, 2020. (*Id.*)

Plaintiff contends that Defendant Caron refused to answer Plaintiff's grievances and refused to provide him a Step II appeal form. (*Id.*) He alleges that Defendants Huss, Johnson, and Unknown Parties #1, 2, and 3 "were all responsible for isolating and quarantining prisoners who were diagnosed as positive [for] COVID-19[, but] failed to follow protocol." (*Id.*) Plaintiff avers that Defendant Washington, as director of the MDOC, failed to "respond to [his] complaint of

2

[d]eliberate [i]ndifference, [failed] to protect [him] from this life threatening debilitating [d]isease[,] and failed to notify her warden at [MBP,] Ms. Erica Huss." (*Id.*)

Plaintiff alleges that the open bars setting allowed for the virus to spread, and that inmates "could be heard coughing, sneezing[,] and calling out for medical attention." (*Id.*, PageID.12–13.) Plaintiff contends that he suffers from pre-existing medical conditions and sought protection from the virus, "but was emphatically denied time and time again by [D]efendant[]s who" refused to separate Plaintiff from those inmate who had tested positive. (*Id.*, PageID.13.) Plaintiff avers that Defendants ignored protocol and made it "virtually impossible" for him to socially distance from those who had tested positive. (*Id.*) Plaintiff states that he still suffers from side effects, including chest pains, nausea, loss of taste and smell, and respiratory COPD-related issues. (*Id.*, PageID.14.)

Based on the foregoing, Plaintiff contends that Defendants violated his Eighth Amendment rights by demonstrating deliberate indifference to the risk posed by the COVID-19 virus and refusing to separate those inmates who had tested positive from those who had tested negative. Plaintiff also suggests that Defendants violated his First Amendment rights by retaliating against him for using the grievance system. (*Id.*, PageID.15–16.) The Court also construes Plaintiff's complaint to assert claims premised upon Defendant Caron's refusal to process Plaintiff's grievances and to provide a Step II appeal form. Plaintiff seeks declaratory relief and compensatory and punitive damages. (*Id.*, PageID.16.) He also seeks injunctive relief against Defendants Washington and Huss in the form of an order directing them to cease and desist impeding Plaintiff's access to the grievance system. (*Id.*)

**II.    Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **First Amendment Retaliation Claims**

Plaintiff contends that Defendants retaliated against him for using the grievance system by refusing to protect him from COVID-19 by failing to move the inmates who had tested positive from Plaintiff's unit. (ECF No. 1, PageID.15–16.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are

5

allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Upon review of Plaintiff's complaint, the Court concludes that Plaintiff merely alleges the ultimate fact of retaliation with respect to all named Defendants. He has not presented any facts to support a conclusion that any of the Defendants retaliated against him by refusing to separate him and other inmates who had tested negative for COVID-19 because Plaintiff had filed several grievances regarding the issue. Even if the conduct occurred in temporal proximity to Plaintiff's grievances, the Sixth Circuit has been reluctant to find that temporal proximity, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, 801 F. App'x 956, 960–61 (6th Cir. 2020), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive). The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claims against all Defendants.

B.      **Claims Regarding Handling of Grievances**

The Court has construed Plaintiff's complaint to assert that Defendant Caron violated his rights by refusing to process his grievances and by refusing to provide Plaintiff a Step II appeal form. Plaintiff, however, has no due process right to file a grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan

law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Caron's conduct did not deprive him of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendant Caron's conduct. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendant Caron's actions have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of

7

*available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, Plaintiff has failed to state a cognizable claim against Defendant Caron premised upon his handling of Plaintiff's grievances.

### C. Eighth Amendment Claims

Plaintiff's primary claim is that Defendants violated his Eighth Amendment rights by demonstrating deliberate indifference to the risk posed by the COVID-19 virus. Specifically, Plaintiff contends that Defendants ignored MDOC policies and protocols and failed to separate those inmates who had tested positive for the virus from those who had tested negative. Plaintiff suggests that the intermingling of positive and negative inmates in G-Unit led to him contracting COVID-19 on October 10, 2020. (ECF No. 1, PageID.12.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for

prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that Defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Objective Prong

Here, Plaintiff contends that he was incarcerated under conditions that led to him contracting COVID-19. (*See generally* ECF No. 1.) In a 2020 case brought by federal prisoners under 28 U.S.C. § 2241, the United States Court of Appeals for the Sixth Circuit addressed the issue of whether the Bureau of Prisons (BOP) violated the Eighth Amendment rights of medically vulnerable inmates at the Elkton Federal Correctional Institution by failing to adequately protect them from COVID-19 infection. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). In the opinion,

the Sixth Circuit found that the plaintiffs in *Wilson* had easily satisfied the objective component of an Eighth Amendment claim:

> The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death. The BOP acknowledges that "[t]he health risks posed by COVID-19 are significant." CA6 R. 35, Appellant Br., PageID 42. The infection and fatality rates at Elkton have borne out the serious risk of COVID-19, despite the BOP's efforts. The transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death. Petitioners have put forth sufficient evidence that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

*Id.* at 840.

Under that precedent, a medically vulnerable plaintiff may satisfy the objective prong by alleging conditions that could facilitate COVID-19 transmission within a prison and the health risks posed by the virus. In this case, Plaintiff alleges conditions that facilitated the transmission of COVID-19 throughout G-Unit at MBP. Plaintiff also contends that he has unspecified pre-existing medical conditions that made him vulnerable to contracting the virus. Plaintiff, therefore, has alleged facts sufficient to satisfy the objective prong of the deliberate indifference test.

### 2. Subjective Prong

In *Wilson*, the Sixth Circuit also addressed the subjective prong of an Eighth Amendment COVID-19-related claim, noting that the pertinent question was whether the BOP's actions demonstrated deliberate indifference to the serious risk of harm posed by COVID-19 in the prison. *See Wilson*, 961 F.3d at 840–41.

#### a. Defendants Huss, Johnson, and Unknown Parties #1, 2, and 3

Plaintiff alleges that Defendants Huss, Johnson, and Defendants Unknown Parties #1, 2, and 3 were all aware of MDOC protocol regarding the need to quarantine inmates who had tested positive for COVID-19. (ECF No. 1, PageID.12.) According to Plaintiff, these individuals "were

10

all responsible for isolating and quarantining prisoners who were diagnosed as positive [for] COVID-19[, but] failed to follow protocol." (*Id.*) Plaintiff's exhibits indicate that he wrote to these individuals, asking for proper protocols to be followed, but nothing was done. (ECF Nos. 1-4. 1-8, 1-9, 1-10, 1-11.) Plaintiff has also attached an affidavit from inmate Darryl Lamont Gardner, who was housed in G-Unit with Plaintiff during the relevant time. (ECF Nos. 1-21, 1-22.) Inmate Gardner indicates that he asked Defendant Huss, during rounds, why quarantine protocols were not being followed. (ECF No. 1-21, PageID.40.) Defendant Huss responded, "It doesn't matter; you're all going to get it anyways." (*Id.*) Although Plaintiff has by no means proven deliberate indifference, taking his allegations as true and in the light most favorable to him, the Court may not dismiss Plaintiff's Eighth Amendment claims regarding the risk of COVID-19 exposure against Defendants Huss, Johnson, and Defendants Unknown Parties #1, 2, and 3 at this time.

### b. Defendant Washington

Plaintiff suggests that Defendant Washington violated his Eighth Amendment rights because she failed to respond to his complaint regarding the handling of the virus at MBP. (ECF No. 1, PageID.12.) Plaintiff also suggests that Defendant Washington failed to protect him because she failed to notify Defendant Huss about the issues Plaintiff raised in his complaint. (*Id.*)

Essentially, Plaintiff seeks to hold Defendant Washington liable because of her position as Director of the MDOC. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*,

11

310 F.3d at 899; *see also Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Washington encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in the alleged decision to ignore protocol and not quarantine inmates who had tested positive for COVID-19. Plaintiff's conclusory allegations of supervisory liability are insufficient to demonstrate that Defendant Washington was personally involved in the alleged violations of Plaintiff's Eighth Amendment rights. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim against Defendant Washington.

### c.     Defendant Caron

Plaintiff also contends that Defendant Caron violated his Eighth Amendment rights, but Plaintiff's only allegations about Defendant Caron are that he did not respond to Plaintiff's

grievances and that he failed to provide a Step II appeal form. It also appears from Plaintiff's exhibits that Defendant Caron denied at least one of his grievances concerning the spread of COVID-19. (ECF No. 1-3, PageID.22.) As noted *supra*, however, § 1983 liability may not be imposed based upon the denial of an administrative grievance or the failure to act based upon information presented in a grievance. *See Shehee*, 199 F.3d at 300. Plaintiff's complaint is devoid of facts suggesting that Defendant Caron was personally involved in the alleged violations of his Eighth Amendment rights. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim against Defendant Caron.

### D. Claims for Declaratory and Injunctive Relief

Plaintiff seeks declaratory relief against all Defendants, and also seeks injunctive relief against Defendants Washington and Huss. As discussed above, the Court has dismissed all of Plaintiff's claims—including Plaintiff's claims for declaratory and injunctive relief—against Defendants Washington and Caron. With respect to his claims for declaratory and injunctive relief against the remaining Defendants, Plaintiff is no longer confined at MBP, where those individuals were employed in 2020. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 185 (6th Cir. 1996). Plaintiff is now incarcerated at LRF, and Defendants Huss, Johnson, and Unknown Parties #1, 2, and 3 are not employed at that facility. The Court, therefore, will dismiss Plaintiff's claims for declaratory and injunctive relief against Defendants Huss, Johnson, and Unknown Parties #1, 2, and 3.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington and Caron will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also

dismiss, for failure to state a claim, Plaintiff's First Amendment retaliation claims against the remaining Defendants, his claims for declaratory relief against the remaining Defendants, and his claim for injunctive relief against Defendant Huss. Plaintiff's Eighth Amendment deliberate indifference claims for damages against Defendants Huss, Johnson, and Unknown Parties #1, 2, and 3 remain in the case.

    An order consistent with this opinion will be entered.

Dated:     April 5, 2023                     /s/ Robert J. Jonker
                                                                                       Robert J. Jonker
                                                                                        United States District Judge