UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LEONARD M. HICKMAN #577165,   Case No. 2:22-cv-232

    Plaintiff,   Hon. Robert J. Jonker
                                            U.S. District Judge
v.

HEIDI E. WASHINGTON, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R. & R.) addresses a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by the two remaining named Defendants, as well as their motion to stay discovery. (ECF Nos. 28, 30.) Plaintiff has not responded to either motion.

Plaintiff – state prisoner Leonard M. Hickman – filed a verified complaint under 42 U.S.C. § 1983 alleging that the Defendants violated his First and Eighth Amendment rights while he was incarcerated at Marquette Branch Prison (MBP). (ECF No. 1.) Plaintiff initially filed suit against MDOC Director Heidi E. Washington as well as the following MBP personnel: Warden Erica Huss, Grievance Coordinator Glenn Caron, Assistant Residential Unit Supervisor Unknown Johnson, Lieutenant/Shift Commander Unknown Party #1, and Sergeants/Supervisors

1

Unknown Parties #2 and #3. (*Id.*) Plaintiff states that each Defendant was sued in their personal and official capacity. (*Id.*, PageID.11.)

On April 5, 2023, the Court issued a Screening Opinion. (ECF No. 6.) In the opinion, the Court dismissed: (1) Defendants Washington and Caron for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c); (2) Plaintiff's First Amendment retaliation claims against the remaining Defendants; (3) Plaintiff's claims for declaratory relief against the remaining Defendants; (4) Plaintiff's claim for injunctive relief against Defendant Huss. (*Id.*, PageID.84.)

Plaintiff's Eighth Amendment deliberate indifference claims for damages against Defendants Huss, Johnson, and Unknown Parties #1, #2, and #3 remained in the case. (*Id.*)

Defendants filed a motion for summary judgment on the basis of exhaustion on June 28, 2024. (ECF No. 19.) The undersigned issued an R. & R. on October 3, 2024, recommending that the Defendants' motion for summary judgment be denied as Defendants failed to show "that a legitimate route to administrative exhaustion was available to Hickman and that he failed to take it." (ECF No. 23, PageID.165−66.) United States District Judge Rober J. Jonker adopted the R. & R. on October 28, 2024, and denied the Defendants' motion for summary judgment. (ECF No. 25.)

On January 1, 2025, Defendants Erica Huss and Erik Johnson filed a motion to dismiss under the same standard the Court utilized in screening the Plaintiff's complaint. (ECF No. 28.) In their motion, the Defendants argue that Plaintiff's

complaint should be dismissed because: (1) the Eleventh Amendment bars Hickman's official capacity claims; (2) Hickman fails to establish the personal involvement of Huss or Johnson to bring a constitutional claim; (3) Hickman fails to establish an Eighth Amendment claim because he does not show that either Huss or Johnson acted with deliberate indifference; (4) Hickman fails to show that his COVID-19 claims rise to a constitutional violation; and (5) Defendants are entitled to qualified immunity.

It is respectfully recommended that the Court **grant** Defendant Huss's and Johnson's motion to dismiss, as Hickman's claims against them in their official capacities are barred by the Eleventh Amendment and they are entitled to qualified immunity in their individual capacities. The undersigned respectfully recommends that the Court **deny** the Defendants' motion to stay discovery as moot.

## II.  Factual Allegations

Hickman's allegations against Defendants Huss, Johnson, and Unknown Parties #1, #2, and #3 were set forth in the Court's April 2023 Screening Opinion. (ECF No. 6, PageID.72–73.)   There, the Court set out in pertinent part:

> Plaintiff's complaint concerns an outbreak of COVID-19 that occurred in 2020. He alleges that on or about September 30, 2020, multiple prisoners confined in G-Unit tested positive for COVID-19. (ECF No. 1, PageID.11.) Plaintiff sent numerous kites to Defendants "to put on notice all staff that prisoner who tested positive for COVID-19 [should] be moved/quarantined and separated" from Plaintiff and other inmates who had tested negative for the virus. (*Id.*) Plaintiff contends that Defendants "refused to respond and failed to take action to prevent Plaintiff becoming or being exposed and contracting the COVID-19 virus." (*Id.*, PageID.12.) Plaintiff ultimately tested positive for COVID-19 on October 10, 2020. (*Id.*)

3

>   Plaintiff contends that Defendant Caron refused to answer Plaintiff's grievances and refused to provide him a Step II appeal form. (*Id.*) He alleges that Defendants Huss, Johnson, and Unknown Parties #1, 2, and 3 "were all responsible for isolating and quarantining prisoners who were diagnosed as positive [for] COVID-19[, but] failed to follow protocol." (*Id.*) Plaintiff avers that Defendant Washington, as director of the MDOC, failed to "respond to [his] complaint of [d]eliberate [i]ndifference, [failed] to protect [him] from this life threatening debilitating [d]isease[,] and failed to notify her warden at [MBP,] Ms. Erica Huss." (*Id.*)
>
>   Plaintiff alleges that the open bars setting allowed for the virus to spread, and that inmates "could be heard coughing, sneezing[,] and calling out for medical attention." (*Id.*, PageID.12–13.) Plaintiff contends that he suffers from pre-existing medical conditions and sought protection from the virus, "but was emphatically denied time and time again by [D]efendant[]s who" refused to separate Plaintiff from those inmate who had tested positive. (*Id.*, PageID.13.) Plaintiff avers that Defendants ignored protocol and made it "virtually impossible" for him to socially distance from those who had tested positive. (*Id.*) Plaintiff states that he still suffers from side effects, including chest pains, nausea, loss of taste and smell, and respiratory COPD-related issues. (*Id.*, PageID.14.)

### III.  Motion to Dismiss Standard

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Put differently, if plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

4

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

The Plaintiff is proceeding *pro se*. As such, his pleadings are subject to less stringent standards than those prepared by attorneys. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972).

## IV. Analysis

### A. Eleventh Amendment

Defendants Huss and Johnson argue that Hickman's claims against them in their official capacities are barred by the Eleventh Amendment and must be dismissed by the Court.

A lawsuit against a state official for monetary damages is treated as a lawsuit against the State. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Section 1983 did not expressly abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

However, state actors are not entitled to sovereign immunity on claims for prospective relief. *Doe v. Wigginton*, 21 F.3d 733 (6th Cir. 1994) (citing *Ex parte Young*, 209 U.S. 123, 159−60 (1908)) (explaining that official-capacity claims for prospective relief are "deemed to be against only the nominal defendant officers" and are therefore not barred by the Eleventh Amendment); *see also Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014) (explaining that *Ex parte Young* and its progeny "allow federal courts to enjoin state officers in their official capacity from prospectively violating a federal statute or the Constitution").

At this stage, Plaintiff does not seek prospective relief. As such, Plaintiffs' claims against Defendants Huss and Johnson in their official capacities for monetary damages are properly dismissed in accordance with the Eleventh Amendment.

## IV. Qualified Immunity

Defendants Huss and Johnson argue that the case against them should be dismissed entirely based upon qualified immunity. (ECF No. 29, PageID.203.)

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al–Kidd, supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff, supra*, at 2023 (internal quotation marks and citation

omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson, supra*, at 641, 107 S.Ct. 3034.

*D.C. v. Wesby*, 538 U.S. 48, 63-64 (2018).

Huss and Johnson first argue that they are entitled to qualified immunity because Plaintiff's allegations do not make out an Eighth Amendment violation. (ECF No. 29, PageID.204.) The Defendants base this argument on Centers for Disease Control (CDC) recommendations, state of Michigan Executive Orders, and Michigan Department of Corrections policies implemented to address the COVID-19 pandemic in the prisons. However, the Court is not concerned with the conduct of the CDC, the governor, nor the MDOC− the Court is concerned with the conduct of Defendants Huss and Johnson.

This motion was brought under Rule 12(b)(6), not under Rule 56. The standard is significantly different. Here the Court looks only at the allegations asserted in Plaintiffs' complaint and determines whether those allegations are enough to state a violation of clearly established law at the time of alleged wrongdoing. As noted above, the Court has already determined that the allegations in Plaintiffs' complaint state an Eighth Amendment deliberate indifference claim against Defendants Huss and Johnson. (ECF No. 6, PageID.81.) Specifically, the Court has opined that:

> Although Plaintiff has by no means proven deliberate indifference, taking his allegations as true and in the light most favorable to him, the Court may not dismiss Plaintiff's Eighth Amendment claims regarding the risk of COVID-19 exposure against Defendants Huss, Johnson, and Defendants Unknown Parties #1, 2, and 3 at this time.

9

(*Id.*)

However, Huss and Johnson also argue that they are entitled to qualified immunity because the Plaintiff cannot show that they violated a constitutional right that was clearly established at the time of the conduct in question. (ECF No. 29, PageID.205.) The Defendants assert that Hickman cannot show that prior to September 2020, any court held that prison officials violated the Eighth Amendment "merely by housing a prisoner in a single-man cell in the same housing unit as COVID-19 positive prisoners." (*Id.*, PageID.206.)

The Plaintiff has the burden of showing that he had a clearly established right in September 2020 that was violated by Defendants Huss and Johnson.

In his complaint, Hickman states that the first inmate tested positive for COVID-19 in MBP on or about September 30, 2020. (ECF No. 1, PageID.11.) He states that he wrote multiple kites and requests to MBP staff, including Defendants Huss and Johnson, alerting them that any COVID-19 positive inmates should be quarantined or moved away from the Plaintiff because he had a preexisting condition. (*Id.*, PageID.11–13.) Hickman argues that the Defendants failed to follow "protocols established to mitigate th[e] spread of COVID-19" and states that Defendants "failed to separate positive [COVID-19] case from plaintiff." (*Id.*, PageID.12–13.) Hickman states that he tested positive for the virus on October 10, 2020. (*Id.*, PageID.12.) Hickman does not provide a response to the Defendants' motion to dismiss and does not provide any case law in his complaint that shows there was a

clearly established right in September 2020 for COVID-19 positive inmates to be separated from COVID-19 negative inmates.

In 2020, COVID-19 was "unprecedented" and since that time "humanity's knowledge of the disease has evolved drastically." *Ryan v. Nagy*, No. 2:20-CV-11528, 2021 WL 6750962, at *9 (E.D. Mich. Oct. 25, 2021), *report and recommendation adopted in part*, No. 20-11528, 2022 WL 251917 (E.D. Mich. Jan. 26, 2022) (citing *Tate v. Arkansas Dep't of Corr.*, No. 4:20-CV-558-BSM-BD, 2020 WL 7378805 (E.D. Ark. Nov. 9, 2020), *report and recommendation adopted*, No. 4:20-CV-00558-BSM, 2020 WL 7367864, at *11 (E.D. Ark. Dec. 15, 2020)). Governor Whitmer declared a state of emergency in the state of Michigan on March 10, 2020 due to the "novel coronavirus." (ECF No. 29-4, PageID.221−22 (Executive Order No. 2020-4 Declaration of State of Emergency).) Days later, the MDOC ceased in-person visits to prisoners "for the safety of staff, prisoners and the public. (ECF No. 29-5, Page225 (MDOC Press Release, March 13, 2020).) The MDOC issued a Memorandum outlining the precautions staff members were to take to prevent the spread of the virus, including: wearing a mask, social distancing, quarantining prisoners who tested positive for the virus, limiting of cell transfers, permitting cleaning wipes and bleach in units, and limiting of inmate interaction. (ECF No. 29-7 (April 18, 2020, MDOC Director's Office Memorandum 2020-30).) Similarly, the CDC issued interim guidance that recommended prison staff quarantine sick prisoners, promote hygiene, and encourage social distancing. (ECF No. 29-6 (CDC Interim Guidance on COVID-19).)

11

Despite guidance from leaders and medical experts, there was no precedent from the Sixth Circuit or the Supreme Court in 2020 that would have clearly shown officials in the Defendants' position that failure to quarantine COVID-positive prisoners would constitute a violation of constitutional rights.  Courts evaluating similar facts have found that there was no violation of a clearly established constitutional right where prison staff failed to quarantine or socially distance prisoners in the midst of COVID-19.  *See Ryan v. Nagy*, No. 2:20-CV-11528, 2021 WL 6750962 (E.D. Mich. Oct. 25, 2021), *report and recommendation adopted in part*, No. 20-11528, 2022 WL 251917 (E.D. Mich. Jan. 26, 2022), *and report and recommendation adopted in part*, No. 20-11528, 2022 WL 260812 (E.D. Mich. Jan. 26, 2022) (finding defendants had not violated a clearly established constitutional right where defendants did not provide constant social distancing to prevent the spread of COVID-19); *Jones v. Burt*, No. 1:21-CV-41, 2022 WL 4244298 (W.D. Mich. July 15, 2022), *report and recommendation adopted in part*, No. 1:21-CV-41, 2022 WL 3210073 (W.D. Mich. Aug. 9, 2022) (finding that in 2020 it was not settled law that seating inmates side by side in violation of social distancing rules constituted an Eighth Amendment violation); *Shepard v. Artis*, No. 1:22-CV-326, 2023 WL 6394064 (W.D. Mich. Aug. 29, 2023), *report and recommendation adopted*, No. 1:22-CV-326, 2023 WL 6389746 (W.D. Mich. Oct. 2, 2023) (finding that it was not settled law in 2020 that failure to immediately quarantine inmates who tested positive for COVID-19 constituted an Eighth Amendment violation).

Thus, in the opinion of the undersigned, Defendants Huss and Johnson are entitled to qualified immunity as Hickman fails to demonstrate that a reasonable official in the Defendants' position would have known that failure to quarantine COVID-positive inmates violates the Eighth Amendment.

### V. ECF No. 30 – Defendants' Motion to Stay Discovery

Defendants argue they are entitled to a stay of discovery in the case because they have filed the instant motion to dismiss. (ECF No. 30.)

The undersigned respectfully recommends that the Court deny the motion to stay as moot.

### VI. Recommendation

The undersigned respectfully recommends that the Court **grant** Defendants Huss's and Johnson's motion to dismiss. The undersigned respectfully recommends that the Court **deny** the Defendants' motion to stay discovery as moot.

Dated:   May 12, 2025                                   /s/ *Maarten Vermaat*
                                                         MAARTEN VERMAAT
                                                         U.S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).